**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**LINDSAY OLSON,**
766 E. Main Street
Coppell, Texas, 75019

*Plaintiff*,

**vs.**

**LAW OFFICES OF PAUL GARRITY**
14 Londonderry Road
Londonderry, NH 03053

and

**PAUL J. GARRITY**
14 Londonderry Road
Londonderry, NH 03053

*Defendants.*

**Case No. 1:25-cv-4231**

<u>**COMPLAINT FOR
COPYRIGHT INFRINGEMENT**</u>

**JURY TRIAL DEMANDED**

Plaintiff Lindsay Olson files her Complaint against Defendants Law Offices Of Paul

Garrity and Paul J. Garrity, and alleges upon personal knowledge as to her conduct, and on

information and belief based on the investigation of her counsel, as to all other alleged conduct

herein, as follows:

## I.  INTRODUCTION

1.      This is a case about a lawyer and his law firm that pirated a copyrighted expert

report and used that report in a criminal case for the very same purpose the report was originally

created.

2.      Plaintiff Lindsay Olson ("Plaintiff" or "Olson") authored a written expert report

titled "Multi-District Comparative Community Attitude Study" (the "Community Attitude

Report" or the "Report"), analyzing attitudes in the jury pool of the District of Columbia toward

1

criminal defendants charged for crimes related to high-profile events at the United States Capitol on January 6, 2021 ("J6 Defendants").

3.     Plaintiff Olson is the sole copyright owner and author of the Report.

4.     Defendants against Defendants Law Offices of Paul Garrity and Paul J. Garrity (collectively the "Defendants" or "Garrity Defendants") represented J6 Defendant Kirstyn Niemela.

5.     Plaintiff's complaint arises out of copyright infringement claims based on the unauthorized copying, public distribution, and public display of the Report in a public filing by Defendants without a license to use the Report and without a valid defense.

6.      Defendants exploited the Report in support of a motion to transfer venue for their J6 Defendant, using the Report *for the very purpose the Report was created and available for licensing*: in a criminal case as expert support for a motion to transfer venue.

## II. PARTIES

7.     Plaintiff Lindsay Olson ("Olson") is a citizen of Texas.  She operates through In Lux Research and Analytics, a sole proprietorship.

8.     Defendant Law Offices of Paul Garrity is a law firm entity with an address at 14 Londonderry Road, Londonderry, New Hampshire 03053.

9.     Defendant Paul J. Garrity operates his law firm at 14 Londonderry Road, Londonderry, New Hampshire 03053.

10.     Unless specifically alleged, whenever it is alleged that Defendants committed any act or omission, it is meant that the Defendants acted jointly through their owners, partners, associates, officers, directors, agents, servants, executives, lawyers, management, employees, subsidiaries, or affiliates committed such act or omission and that at the time such act or

omission was committed, it was done with the full authorization, ratification or approval of Defendants or was done in the routine normal course and scope of employment of the Defendants' owners, partners, associates, officers, directors, agents, servants, executives, lawyers, management, employees, subsidiaries, or affiliates.

### III. JURISDICTION AND VENUE

11. This action arises under the federal question, the U.S. Copyright Act, 17 U.S.C. §§ 101, *et. seq.*

12. This Court has exclusive jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b) and because a federal question is involved regarding infringement of copyright.

13. Under 28 U.S.C. Section 1400, civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights may be instituted in the district in which the defendants or its agent resides or may be found or where defendants committed acts of infringement and have a regular and established place of business.

14. This Court has personal jurisdiction over Defendants and venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants harmed Plaintiff in this District.

15. This Court has *in personam* jurisdiction over Defendants because Defendants availed themselves of the privileges of conducting business in this District and Defendants incurred a benefit from Plaintiff here.

16. Therefore, it is reasonable for Defendants to submit to the jurisdiction of this federal district court.

**IV. FACTUAL ALLEGATIONS**

17.     In 2022, Plaintiff authored the Report based on a request by two lawyers, David Fischer and Julie Haller ("Requesting Attorneys"), who represented two J6 Defendants in what became known as the Oath Keepers trial and which case the Report was used.

18.     Plaintiff authored the Report and finalized the Report on or about April 15, 2022.

19.     Plaintiff Olson has legal standing to enforce copyright infringement claims for the Report as the sole author and copyright owner of the Report.

20.     In exchange for a $30,000 fee to use the Report in the Oath Keepers case, Plaintiff licensed a copy of the Report to the Requesting Attorneys, authorizing them to use it in support of their motions to transfer venue based on alleged prejudicial jury bias in the District of Columbia's jury pool. No other lawyers obtained a license to the Report.

21.     The Report was original and sufficiently based on Plaintiff's work product, creativity, originality, and as the sole author, justifying the Report as copyrightable.

22.     The Report was created without a specific reference or focus on the Oath Keepers J6 defendants so that the Report could be licensed for use in other J6 criminal cases.

23.     The Report was an independent creation by Plaintiff as the author.

24.     The Report contains a degree of creativity based on the amount of selection, coordination, and arrangement of the text of the Report and Plaintiff's expression of how the facts as gathered are described, organized, illustrated, and/or arranged based on interpretation of data from polling and analyzing that data into a digestible, easy to comprehend qualitative narrative about the findings of that data written in the Report for use in litigation.

25.     The Report reflected some "creative spark" or "modicum of intellectual labor" based on Plaintiff's choices about wording and presentation of how the data from the polling

applied to that snapshot in time during the spring of 2022 when the J6 cases were starting to proceed towards trial and jury selection.

26. After Plaintiff delivered a copy of the Report to the Requesting Attorneys, they uploaded the Report to the Court's public docket in 1:22-cr-00015-APM (Dkt. 654-1) and in 1:21-cr-00028-APM (Dkt. 93-1) (otherwise known as the Oath Keepers case consolidated for trial and jury selection), causing a public display of the Report in support of a motion to transfer venue, as authorized by Plaintiff in exchange for the required $30,000 payment for the Oath Keepers case.

27. Plaintiff neither assigned the copyright in the Report to the Requesting Attorneys nor granted any sublicensing rights to any other lawyer or J6 defendant.

28. The Requesting Attorneys' authorized copying and public display of the Report on the public federal court's PACER system did not relinquish or waive Plaintiff's exclusive copyright in the Report, such that any J6 criminal defense lawyer could simply copy the entire Report off of PACER and publicly display the Report as support for a motion to transfer venue in another case, *for the very same purpose* the Report was authored and offered in the market.

29. The Report was available for licensing to any J6 Defendant or lawyers for the fair and established market value of $30,000.

30. The fact that Defendants made an authorized copy of the Report from the Internet (PACER) and downloaded a copy which was available through PACER, does not mean that the Report was released in the public domain or unconditionally free to use for the very same purpose it was created and offered in the market.

31. On or about December 6, 2022, Defendants downloaded Plaintiff Olson's Report from PACER, then copied and pasted significant portions of the Report, including text and

5

graphics, into the body of their motion, which they published on the public PACER, causing an unauthorized public display.

32.     The Garrity Defendants copied and pasted significant portions of Plaintiff's Report into their legal motion, then filed the motion, causing the Report to be publicly displayed on December 6, 2022, in *USA v. Eckerman, Niemela, et. al*; 1:21-CR-00623 (See Dkt. 65 and 65-1). See attached Exhibit A to this complaint, Defendants' motion in *Niemela* (Dkt. 65) along with Exhibit B, the Report (Dkt. 65-1).

33.     In or about December 6, 2022, Defendants copied Plaintiff Olson's Report and published a copy of the Report in its entirety on the public PACER, causing an unauthorized public display of the Report.

34.     Defendants' exploitation of the Report was a complete unauthorized substitute for an authorized display and publication, which needed to have been obtained by paying Plaintiff an agreed licensing fee.

35.     Defendants were enriched by their unauthorized exploitation of Plaintiff's Report.

36.     When Defendants copied, uploaded and displayed both excerpts and a full copy of the Report to the public, they did so without Plaintiff's authorization and without paying Plaintiff an agreed licensing fee.

37.     Defendants' exploitation of the Report subverted the market for Plaintiff Olson's Report.

38.     Plaintiff Olson's Report had a limited market for use by lawyers representing J6 Defendants and any *pro se* J6 Defendant facing jury trials sourcing jurors from the District of Columbia.

6

39. The reasonable market for Plaintiff Olson's Report was limited to a finite number of buyers over a limited time period.

40. Defendants were part of that market of likely buyers.

41. Defendants' unauthorized exploitations of the Report reduced the limited market for the Report by at least one license.

42. A license fee of Plaintiff Olson's Report is worth $30,000 based on prior licensing history.

43. Defendants impaired the market for Plaintiff Olson's Report by distributing it for public display, acting as if they had authorization from Plaintiff when they did not.

44. Authorization to use Plaintiff's Report was available to Defendants in exchange for an agreed payment of a licensing fee per use of the Report.

45. Plaintiff authored the Report, which was an original and in-depth critical analysis of community attitudes of potential jurors, including visualizations and written commentary, justifying and supporting copyrightability.

46. Plaintiff spent considerable time and effort to author the Report.

47. Plaintiff offers to create original written expert reports for use in litigation as part of her business and must be paid fair market value for use of her written expert reports in court.

48. The Report was specially and specifically created and authored for use in criminal cases for J6 Defendants venued in the District of Columbia.

49. The Report had significant commercial value.

50. Defendants used the Report as part of their professional representation in the *Niemela* case identified above and were enriched by its use.

51. Defendants never sought Plaintiff's authorization to use the Report in the case.

7

52.     Defendants subverted the market for Plaintiff Olson's Report.

53.     Defendants impaired the market for Plaintiff Olson's Report by copying and distributing it to the public and to others who could make use of it without authorization or payment to Plaintiff.

54.     Notably, Defendants do not mention Plaintiff in the docket entry on PACER (Dkt. 65, making it difficult to discover the infringement: 65 12/06/2022 MOTION to Change Venue and Memorandum In Support by KIRSTYN NIEMELA. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Garrity, Paul) (Entered: 12/06/2022)

55.     During representation of J6 Defendant Niemela, Defendants made a copy of Plaintiff's copyrighted Report and published and distributed it on the public docket without authorization and for its intrinsic purpose that Plaintiff created the Report.

56.     Because Defendants copied and distributed Plaintiff Olson's copyrighted Report without authorization, they infringed Plaintiff Olson's copyright and are liable for actual damages for one license totaling $30,000.

57.     Defendants named herein continue to exploit Plaintiff's copyrighted work for a commercial purpose, without payment and without authorization.

58.     On or about October 9, 2025, Plaintiffs sent the Garrity Defendants a cease-and-desist letter and notice that they had not paid for Plaintiff's Report and that $30,000 was owed to avoid legal action.

59.     Defendants have not responded to Plaintiff's letter and notice.

60.     Plaintiff anticipates that Defendants will argue the unauthorized use of the Report in support of motions to transfer venue qualifies for judicial notice, but the facts and law do not support such here.

61.    Federal Rule of Evidence 201 "defines a fact appropriate for judicial notice as "one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). *Cnty. of San Miguel v. Kempthorne,* 587 F. Supp. 2d 64, 78 (D.D.C. 2008).

62.    Here, Defendants did not simply ask the Court to take notice that Plaintiff's report existed on the public pacer docket. Instead, Defendants sought relief for their J6 client based on the contents and substance of the Report for the truth and weight of findings and expert analysis on specific jury pool attitudes– the exact question central to the respective pending venue motion.

63.    Judicial notice is not proper by directing a Court to analyze the substance of Plaintiff's Report displayed on the public docket in support of a motion. Nor is judicial notice achieved by Defendants copying Plaintiff's report that had been legitimately obtained by others and filing it in support of Defendants' own motion without paying for this expert Report.

64.    Defendants could have simply referenced that Plaintiff authored the Report, noticed the court that it existed and summarized the findings.

65.    Defendants needed the full value of the Report, so they chose to use it as if they had, themselves, obtained a copy for their own use in their own motion.

66.    Because only actual damages are at issue, Defendants' intent is not at issue for Plaintiff to prove copyright infringement.

67.    Defendants published the April 2022 Report to support facts (and law) that were clearly in dispute regarding whether the DC jury pool could be a fair venue for their J6 defendant Niemela.

68. Plaintiff also anticipates that Defendants may assert the affirmative defense that their exploitation of the Report is somehow protected by the fair use doctrine.

69. Publishing a copyrighted Report to the public docket in its entirety for the very same purpose the Report was created indisputably constitutes infringing activity and is not fair use because it robs Plaintiff of the full economic benefits of her copyright and fair market value licensing fee of $30,000 and because the use was for the same purpose the Report was created.

70. By analogy, if a group of lawyers hire a photographer to document a construction site in support of an expert report or to offer as a vivid demonstrative exhibit for use at trial to support a case in litigation, but fail to pay the photographer for a license to copy her copyrighted photos, and then use those copyrighted photos for the same purposes (in a court case) the photos were created without authorization or payment, those lawyers have committed copyright infringement. See *Images Audio Visual Prods., Inc. v. Perini Bldg. Co.*, 91 F. Supp. 2d 1075, 1082-1083, 1086 (E.D. Mich. 2000) (holding that photographs taken for litigation to document a construction site were for litigation, and those works were "intended to capture such information, specifically for the purpose of litigation" and for judicial proceedings as the intended market, therefore the copyright holder is entitled to exercise control over the use of the works).

71. In another example as to why the fair use doctrine does not apply here, lawyers attempted to subpoena certain photographs, negatives and videotapes created by a photographer in connection with litigation for purposes of inspection and copying without compensating the photographer a fair market, customary value to license the photos. See *Ross v. Miller's Rexall Drugs, Inc.*, No. CIV. A. D-68840, 1990 WL 314290, at *1-*2 (Ga. Super. Oct. 10, 1990).

72. Defendants in *Ross v. Miller's Rexall Drugs, Inc.* refused to pay the photographer's licensing fees, and instead, brazenly attempted an "end-around" by filing a

10

motion to compel a subpoena of the photographs and negatives so that Defendant could use the negatives without paying the full rate, thereby denying the photographer his right to exploit his copyrighted works at a fair market value. The court rejected defendant's attempt to skirt copyright law and quashed the subpoenas. *Id.*

73.     Defendant Garrity, a licensed attorney, and his respective law firm have disregarded Plaintiff's demands to cease exploiting Plaintiff's work and continue to pirate the copyrighted Report without authorization, payment or a viable defense.

74.     Defendants are jointly and severally liable for copyright infringement for actual damages under the Copyright Act.

75.     Defendants are liable for actual damages of $30,000 per unauthorized use, or an amount to be determined at trial.

## V. CAUSES OF ACTION

### COUNT 1: COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. §§ 101 *ET. SEQ.*

### (Against All Defendants)

76.     Plaintiff incorporates herein by this reference each and every allegation contained in each paragraph above.

77.     Plaintiff Olson owns a valid and subsisting copyright registration in the April 15, 2022 Report she authored.  See Ex. B (Report titled "Multi-district comparative study on Community Attitude survey dated April 15, 2022").

78.     Plaintiff Olson registered her Report with the US Copyright Office on December 8, 2022, with the U.S. Copyright Office issuing a registration number TX0009206911.  See 17 U.S. Code § 412.

11

79.    Having not paid for any use of the Report, Defendants and their partners, agents, affiliates, and associates are liable for the use, copying, publishing of that copy, public display of that copy, distribution of that copy, or otherwise commercially exploiting the copyrighted Report.

80.    Defendants have directly infringed Olson's copyright in the Report by using, copying, filing in court, publicly displaying, distributing, or otherwise commercially exploiting Olson's Report and without Olson's authorization.

81.    Defendants directly benefitted financially from copyright infringement of the Report.

82.    Defendants are each secondarily liable for their respective employees, contractors, associates, and agents' infringement when they publicly displayed Olson's Report in Court for their client without paying to secure a license to use Olson's Report for J6 Niemela.

83.    Plaintiff Olson has suffered actual harm and has incurred significant costs as a direct and proximate result of Defendants' infringement.

84.    Olson is entitled to recover damages based on her actual damages suffered as a result of the Defendants' infringement, pursuant to 17 U.S.C. § 504(b), which amounts will be proven at trial, but no less than $30,000 per use, the amount Plaintiff charged and received from others for identical use of the April 2022 Report.

85.    Defendants' conduct has respectively caused, and any continued infringing conduct will continue to cause, irreparable injury to Olson, unless enjoined by this Court.

86.    Olson has no adequate remedy at law and pursuant to 17 U.S.C. § 502, Olson is entitled to a permanent injunction prohibiting infringement of Olson's exclusive copyrights in

Olson's Copyrighted Reports by Defendants and all persons acting in concert with the Defendants, including their J6 Defendant client.

## VI. JURY TRIAL DEMANDED

87. Pursuant to Fed. R. Civ. P. 38(b), Plaintiff respectfully demands a trial by jury of all the claims asserted in this Complaint so triable.

## VII. RELIEF REQUESTED

88. WHEREFORE, Plaintiff respectfully requests that the Court enter judgment on her behalf adjudging and decreeing that:

A. That an Order be entered against Defendants for violating the provisions of the Copyright Act, 17 U.S.C. §§ 101 et seq. and 501 et seq. by infringing Plaintiff Olson's copyright in her registered April 2022 Report;

B. That an Order be entered against Defendants in favor of Plaintiff Olson for such actual damages or statutory damages as Plaintiff has sustained as a result of Defendants' infringement of Plaintiff's copyright, which totals at least $30,000;

C. That an Order be entered granting injunctive relief against Defendants pursuant to 17 U.S.C. § 502 preventing and restraining infringement of Plaintiff's copyright by Ordering Defendants, their agents, or anyone working for, in concert with, or on their behalf not to use, publish, publicly display, distribute, or in any way disseminate Plaintiff's copyrighted work;

D. That an Order be entered compelling Defendants to account for and/or disgorge all gains, profits, and advantages derived by Defendants by their infringement of Plaintiff's copyright or such damages supported by the provisions of the Copyright Act, 17 U.S.C. §§ 101 et seq.;

E. For punitive damages for Defendants' willful conduct, and

F.      For Plaintiff to be awarded pre-and post-judgment interest from the time of the infringement, and any other relief the Court deems necessary and just.

Dated: December 4, 2025

Respectfully submitted,

**JAMES H. BARTOLOMEI, III P.A.**

By: */s/ James H. Bartolomei*
James Bartolomei Esq.
Of Counsel at Duncan Firm, P.A.
809 W. 3rd Street
Little Rock, Arkansas 72201
501-228-7600 phone
james@duncanfirm.com

*Attorneys for Plaintiff Lindsay Olson*

14