**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LINDSAY OLSON, | |
| Plaintiff, | |
| v. | Civil Action No. 25-3840 (BAH) |
| LAW OFFICES OF KIRA ANNE WEST, and KIRA ANNE WEST, | Judge Beryl A. Howell |
| Defendants. | |

| | |
|---|---|
| LINDSAY OLSON, | |
| Plaintiff, | |
| v. | Civil Action No. 25-3875 (BAH) |
| BRAND WOODWARD LAW, L.P., and STANLEY E. WOODWARD, JR., | Judge Beryl A. Howell |
| Defendants. | |

| | |
|---|---|
| LINDSAY OLSON, | |
| Plaintiff, | |
| v. | Civil Action No. 25-4231 (BAH) |
| LAW OFFICES OF PAUL GARRITY, and PAUL J. GARRITY, | Judge Beryl A. Howell |
| Defendants. | |

**MEMORANDUM OPINION**

Although most of the defendants convicted for their criminal conduct participating in the attack on the U.S. Capitol on January 6, 2021 ("January 6 criminal defendants") have since been pardoned, the reverberations of their criminal cases continue to demand this Court's attention. Plaintiff Lindsay Olson is a jury consultant who produced a jury-attitude report in April 2022 in support of two January 6 criminal defendants' motions to transfer their case out of the District of Columbia. After the report was filed on the public case docket, defense attorneys Kira West,

Stanley Woodward, and Paul Garrity, representing several other January 6 criminal defendants, downloaded the report and attached it as an exhibit in support of their own clients' similar motions to transfer venue, without first seeking permission from plaintiff, as the report's author. Years later, at the end of 2025, plaintiff filed in the District of Columbia three nearly identical civil suits for copyright infringement against West, Woodward, Garrity, and their respective law firms, alleging unauthorized use of her jury-attitude report and seeking actual or statutory damages and other relief. Defendants have each moved to dismiss for failure to state a claim, under Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, defendants' motions in these consolidated cases are denied.

## I.   BACKGROUND

The factual background and procedural history of this case are summarized *seriatim*.

### A.   Factual Background

The relevant facts as alleged in plaintiff's complaints are as follows. *See Casey v. McDonald's Corp.*, 880 F.3d 564, 567 (D.C. Cir. 2018) ("On a motion to dismiss, we must assume that the allegations of the complaint are true.").

Plaintiff, a Texas resident, owns and operates In Lux Research and Analytics, a firm that produces jury-attitude studies. Compl. (West) ¶¶ 2, 7, No. 25-cv-3840, ECF No. 1. On or about April 15, 2022, plaintiff finalized a 27-page, jury-attitude report ("April 2022 Report") at the request of two attorneys representing two criminal defendants in what became known as the "Oath Keepers" trial, involving criminal charges against certain members of an organized militia group, known as the "Oath Keepers," who participated in the attack at the U.S. Capitol on January 6, 2021. *Id.* ¶¶ 16-17. This report's primary conclusion was that "the DC Community is saturated with potential jurors who harbor actual bias" against criminal defendants identified, investigated, charged and prosecuted for their criminal conduct at the Capitol on January 6, 2021. *Id.*, Ex. A,

2

April 2022 Report at 2, ECF No. 1-1 at 21.  The report did not include a copyright notice.  For her services, plaintiff received a total of $30,000 from the original two attorneys who commissioned her report.  Compl. ¶ 19.

The April 2022 Report was subsequently uploaded to the public docket, unsealed, in the Oath Keepers case in support of two of the criminal defendants' motions to transfer venue.  *Id.* ¶ 25; *see also* Motion to Change Venue, *United States v. Rhodes*, No. 22-cr-15 (D.D.C. Apr. 15, 2022), ECF No. 93-1.  The criminal defendants' motions were unsuccessful, however, and transfer was denied.  *United States v. Rhodes*, 610 F. Supp. 3d 29, 57-58 (D.D.C. 2022).

Subsequent litigation initiated by plaintiff ensued and is summarized below.

### 1. *In Lux Research v. Hull McGuire PC et al., No. 23-cv-523*

The alleged copyright infringement in the three consolidated cases here concern the April 2022 Report discussed above.  Nevertheless, an updated report that Olson produced several months later in October 2022 ("October 2022 Report")—and the litigation it engendered, *see In Lux Research v. Hull McGuire PC et al.*, No. 23-cv-523—is discussed by the parties and bears relevance to this case.

Briefly, in late August 2022, John Daniel Hull of Hull McGuire PC, a defense attorney for other January 6 criminal defendants, who were members of *another* organized militia group, known as the "Proud Boys," *see United States v. Nordean*, No. 21-cr-175 (D.D.C.), reached out to plaintiff and expressed interest in hiring her to conduct an updated study on community attitudes toward January 6 criminal defendants.  *In Lux Research v. Hull McGuire PC ("In Lux Research I")*, No. 23-cv-523 (JEB), 2023 WL 6121906, at *1 (D.D.C. Sept. 19, 2023), *vacated in part on other grounds*, No. 23-cv-523 (JEB), 2023 WL 8190821 (D.D.C. Nov. 27, 2023).  Like the Oath Keepers defendants, in the lead-up to their joint criminal trial, certain Proud Boys sought a transfer of their case out of the District.  *Id.*  An update of the April 2022 Report "was necessary, [Hull]

3

explained, because the 'January 6 Congressional committee hearings occurring throughout the summer of 2022' may have influenced attitudes since the poll . . . for the Oath Keepers' trial." *Id.* Plaintiff agreed to provide a revised report for $30,000. *Id.* at *2. On October 10, 2022, plaintiff delivered the updated October 2022 Report to Hull, who promptly filed it on the public docket in support of his client's motion to transfer venue. *Id.* at *3. The motion was unsuccessful, and Hull never paid plaintiff for her services. *Id.*

Plaintiff and her research firm, In Lux Research, then sued Hull and his law firm, as well as other defense counsel representing criminal defendants in the Proud Boys trial, alleging these defense counsel benefited from the report being filed on the joint docket, on claims of, *inter alia*, breach of contract and copyright infringement. The resulting litigation before another Judge on this Court was procedurally complex, involving partial dismissals of some defense counsel defendants, vacatur of two of the dismissals, and a couple amended complaints. *See In Lux Research v. Hull McGuire PC ("In Lux Research III")*, No. 23-cv-523 (JEB), 2024 WL 774858, at *2 (D.D.C. Feb. 26, 2024) (recounting procedural history). Among other things, the litigation ballooned beyond the original dispute over the October 2022 Report to include copyright infringement claims against two other defense lawyers in the Proud Boys trial for separately downloading Olson's earlier April 2022 Report from the public docket in the Oath Keepers trial and attaching it as an exhibit to their own clients' motions to transfer venue. *In Lux Research v. Hull McGuire PC ("In Lux Research II")*, No. 23-cv-523 (JEB), 2023 WL 8190821, at *2 (D.D.C. Nov. 27, 2023).

Ultimately, the suit against Hull over the October 2022 Report culminated in a jury trial in January 2025 on three claims: copyright infringement, breach of contract, and fraud. *In Lux Research v. Hull McGuire PC ("In Lux Research IV")*, No. 23-cv-523 (JEB), 2025 WL 2689151,

at *1 (D.D.C. Sept. 19, 2025).  The jury found for plaintiff on the breach-of-contract claim and awarded $77,000 in damages, but rejected the fraud and copyright-infringement claims.  *Id.* at *2. Plaintiff's additional claims against the two defense lawyers, who attached the April 2022 Report to their clients' venue transfer motions, were settled after the Court determined that the defendants' affirmative defenses to copyright infringement—including fair use—were not proper for pre-discovery resolution. *In Lux Research III*, 2024 WL 774858, at *5 (denying motion to dismiss). *See* Stip. of Dismissal With Prejudice of Defendants Sabino Jauregui, Jauregui Law P.A., Nayib Hassan, and Law Office of Nayib Hassan, P.A., *In Lux Research v. Hull McGuire PC, et al.*, No. 23-cv-523 (D.D.C.), ECF No. 96.[1]

### 2. Defendants Here Attach Olson's April 2022 Report as Exhibits to Their Clients' Motions to Transfer Venue

Over a thousand defendants were prosecuted for the attack on and successful breach of the U.S. Capitol on January 6, 2021, in the U.S. District Court for the District of Columbia.  Many defense lawyers sought transfers of venue for their clients and some of those defense lawyers downloaded plaintiff's jury-attitude report from the public docket and attached the report as an exhibit to their motion.  As relevant here, defense attorney West "[o]n at least three (3) separate cases in 2022," downloaded the April 2022 Report from the public docket and filed it as an exhibit "in its entirety on the public PACER," which is an electronic service that provides public access to federal court records.  Compl. (West) ¶ 30; *see also id.* ¶ 31 (citing *United States v. Harkrider*, No. 21-cr-117 (D.D.C. Jul. 18, 2022), ECF No. 92; *United States v. Neely*, No. 21-cr-642 (D.D.C. Aug. 8, 2022), ECF No. 28; *United States v. Kelly*, No. 21-cr-708 (D.D.C. Nov. 18, 2022), ECF No. 59).  Defense attorney Woodward similarly "published a copy of the Report in its entirety on

---

[1]    As to the other defense counsel defendants, the claims against them were dismissed for reasons not relevant here. *In Lux Research I*, 2023 WL 6121906, at *11.

the public PACER" in one case, Compl. (Woodward) ¶¶ 31-32 (citing *United States v. Klein*; No. 21-cr-40  (D.D.C. Jun. 3, 2022), ECF Nos. 309 & 309-2); as did defense attorney Garrity, Compl. (Garrity) ¶ 32-33 (citing *United States v. Niemela*, No. 21-cr-623 (D.D.C. Dec. 6, 2022), ECF Nos. 65 & 65-1).

As in the Oath Keepers and the Proud Boys trials, the motions for transfer of venue premised on the conclusions in plaintiff's report were universally rejected by every Judge on this Court to consider it.  *See, e.g.*, *United States v. Neely*, No. 21-cr-642 (JDB), 2023 WL 1778198, at *6 (D.D.C. Feb. 6, 2023), *aff'd*, 124 F.4th 937 (D.C. Cir. 2024) (finding that plaintiff's jury survey "suffer[ed] from . . . design defects," and citing *United States v. Garcia*, No. 21-cr-129 (ABJ), 2022 WL 2904352, at *12 (D.D.C. Jul. 22, 2022), which reached a similar conclusion); *see also* *United States v. Oliveras*, No. 21-cr-738 (BAH), 2023 WL 196679, at *3 (D.D.C. Jan. 17, 2023) (noting that "this Judge and every other Judge on this Court [has] den[ied] venue transfer motions" in the January 6 cases).

On December 8, 2022, almost eight months after the creation of the report, and after defense counsel defendants filed their clients' motions to transfer venue, Olson registered her April 2022 Report with the U.S. Copyright Office.  Compl. (West) ¶ 82.

### B.    Procedural History

Several years later, on October 31, November 6, and December 4, 2025, Olson filed three substantially similar suits in the District of Columbia against defense attorneys West, Woodward, and Garrity, respectively, alleging copyright infringement under 17 U.S.C. §§ 101 *et seq.*[2]  On

---

[2]    In addition to the three suits in the District of Columbia, plaintiff has also filed several similar complaints in other districts bringing nearly identical copyright infringement claims against defense attorneys located outside the District of Columbia for their work representing January 6 criminal defendants in this district.  *See Olson v. United States*, No. 25-cv-1644 (Fed. Cl. Oct. 2, 2025) (alleging infringement in eleven instances by various public defenders); *Olson v. McBride*, No. 25-cv-8684 (S.D.N.Y. Oct. 20, 2025) (alleging infringement in one instance); *Olson v. Webb*, No. 25-cv-24904 (S.D. Fl. Oct. 23, 2025) (same); *Olson v. Pierce*, No. 25-cv-12426 (C.D. Cal. Dec. 31, 2025) (same); *Olson v. Federal Defenders of New York, Inc.*, No. 25-cv-10821 (S.D.N.Y. Dec. 31, 2025) (same).  Dispositive

April 8, 2026, the three cases were consolidated *sua sponte* for pretrial and trial purposes. *See* Min. Order (West) (Apr. 8, 2026); Min. Order (Woodward) (Apr. 8, 2026); Min. Order (Garrity) (Apr. 8, 2026).

West, Woodward, and Garrity have each moved to dismiss the complaint against them. *See* West's Mot. to Dismiss Complaint ("West's MTD"), No. 25-cv-3840, ECF No. 10; Woodward's Mot. to Dismiss Complaint ("Woodward's MTD"), No. 25-cv-3875, ECF No. 13; Garrity's Mot. to Dismiss ("Garrity's MTD"), No. 25-cv-4231, ECF No. 10. Woodward's briefing in support of his motion to dismiss was adopted by West in its entirety. *See* West's MTD at 3 ("incorporat[ing] the arguments made in Brand Woodward's motion *in toto*"); *see also* West's Reply at 1 (similar).[3] Garrity filed a separate motion and supporting briefs. All three motions were opposed by plaintiff. *See* Pl.'s Mem. of Law in Opp'n to Woodward's MTD ("Pl.'s Opp'n (Woodward)"), ECF No. 15; Pl.'s Mem. of Law in Opp'n to West's MTD ("Pl.'s Opp'n (West)"), ECF No. 11; Pl.'s Mem. of Law in Opp'n to Garrity's MTD ("Pl.'s Opp'n (Garrity)"), ECF No. 12.

On March 23, 2026, plaintiff filed a notice of supplemental authority in each of the three cases, noting that a judge in the Southern District of Florida declined to dismiss a nearly identical complaint against another defense attorney who allegedly also attached plaintiff's April 2022 Report to a motion to transfer venue in this district in connection with another January 6 criminal

---

motions have been resolved in only one case thus far, *Webb*: On February 25, 2026, a district judge in the Southern District of Florida denied the *Webb* defense counsel defendants' motion to dismiss premised on the application of the fair use doctrine, finding in an oral ruling that defendants did not "meet all of the required elements of this extraordinary defense on a 12(b)(6) motion." Feb. 25, 2026 Hr'g Tr. at 30:13-14, *Olson v. Webb*, No. 25-cv-24904 (S.D. Fl.); *see also* Pl.'s Not. of Supp. Authority (West), ECF No. 18 (attaching *Webb* transcript as exhibit). Subsequently, on May 20, 2026, the parties in *Webb* stipulated to a dismissal. Stip. of Dismissal Without Prejudice, *Olson v. Webb*, No. 25-cv-24904 (S.D. Fl.), ECF No. 47.

[3]    Since West has adopted Woodward's motion to dismiss and reply brief "*in toto*," *see* West's MTD at 3, West's Reply at 1, citations to arguments in Woodward's briefs apply to West as well unless otherwise indicated.

defendant.  *See* Pl.'s Not. of Supp. Authority (West), ECF No. 18 (attaching as exhibit Feb. 25, 2026 Hearing Transcript ("Feb. 25, 2026 Hr'g Tr."), *Olson v. Webb*, No. 25-cv-24904 (S.D. Fl.)); Pl.'s Not. of Supp. Authority (Woodward), ECF No. 20 (same); Pl.'s Not. of Supp. Authority (Garrity), ECF No. 16 (same).  With briefing complete, defendants' motions to dismiss are now ripe for review.

## II.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[] [his or her] claims across the line from conceivable to plausible."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the plaintiff pleads factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).  When considering a Rule 12(b)(6) motion, a court must "accept the operative complaint's well-pleaded factual allegations as true and draw all reasonable inferences in the [plaintiff's] favor."  *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020).  In considering a Rule 12(b)(6) motion, a court may also consider "any documents either attached to or incorporated in the complaint and matters of which the court may take judicial notice."  *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017) (citation and alteration omitted).  Factual disputes, however, generally cannot be resolved on a motion to dismiss, as a court's "role is not to speculate about which factual allegations are likely to be proved after discovery."  *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 70 (D.C. Cir. 2015).

## III.    DISCUSSION

Raising both procedural and substantive arguments, defendants seek dismissal based on the statute of limitations, collateral estoppel, copyrightability, the constitutional right to access and review judicial reports, and the fair use doctrine.  None of these arguments for dismissal is persuasive, at least at this procedural stage, and thus defendants' motions to dismiss are denied. Parties' cross-requests for attorney's fees are also denied as premature.  Defendants' asserted grounds for dismissal are addressed following a brief review of the Copyright Act.

### A.    Copyright Act of 1976

Under the Copyright Act of 1976, as amended, copyright protection attaches to "original works of authorship," 17 U.S.C. § 102(a), "prominent among them, literary, musical, and dramatic works," *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 300 (2019).  An author who creates a copyrightable work "gains 'exclusive rights' in her work immediately upon the work's creation," *id.* at 300-01, "irrespective of registration," *id.* at 307.  By "vesting [copyright owners] with exclusive rights upon creation of their works," the Copyright Act "prohibit[s] infringement from that point forward."  *Id.*; *see also Eldred v. Ashcroft*, 537 U.S. 186, 195 (2003) ("[F]ederal copyright protection . . . run[s] from the work's creation . . . .").  Thus, even "[i]f infringement occurs before a copyright owner applies for registration, that owner may eventually recover damages for the past infringement, as well as the infringer's profits." *Fourth Est.*, 586 U.S. at 300 (citing 17 U.S.C. § 504).  "She must simply apply for registration and receive the Copyright Office's decision on her application before instituting suit." *Id.*

A plaintiff seeking to establish copyright infringement must prove (1) ownership of a valid copyright and (2) that defendants infringed that valid copyright.  *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1295 (D.C. Cir. 2002).  With respect to the first element, a work is copyrightable if it is "original to the author," meaning that it was independently created and "possesses at least

9

some minimal degree of creativity." *Feist Pubs., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345 (1991). As to the second element, an individual infringes a copyright when he "violates any of the exclusive rights of the copyright owner," 17 U.S.C. § 501(a), which includes the right to "reproduce" the copyrighted work, to "distribute copies" of it "to the public," and to "authorize" either of those acts, *id.* § 106(1), (3).

### B.    Statute of Limitations

West argues that two of the three copyright claims against her are barred by the statute of limitations; Woodward argues similarly for the one copyright claim against him. Copyright infringement claims must be "commenced within three years after the claim accrued." 17 U.S.C. § 507(b). "On one understanding of that limitations provision, a copyright claim 'accrue[s]' when 'an infringing act occurs,'" *Warner Chappell Music, Inc. v. Nealy*, 601 U.S. 366, 369 (2024) (quoting *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 670 (2014)), commonly known as the "injury rule," *id.* at 375 (Gorsuch, J., dissenting). Yet, "under an alternative view of the [Copyright] Act's limitations provision, a claim accrues when 'the plaintiff discovers, or with due diligence should have discovered,' the infringing act," commonly known as the "discovery rule." *Nealy*, 601 U.S. at 369 (quoting *Petrella*, 572 U.S. at 670 n.4).

In support of their statute-of-limitations defense, West and Woodward proffer two arguments: *first*, that the timeliness of copyright claims is governed by the injury rule; and *second*, that even if the alternative discovery rule applies instead, plaintiff with more diligent efforts should have discovered the infringement over three years ago. Neither argument is persuasive at this pre-discovery juncture of the case.

### 1. *Injury Rule versus Discovery Rule*

Defendants' topline argument is that the injury rule applies to copyright infringement claims, not the discovery rule. If the injury rule were to apply here, plaintiff's copyright claims

10

against West would have accrued when the Report was filed by West on the public dockets in West's three cases: on July 18, 2022, in *United States v. Harkrider*, No. 21-cr-117 (RCL) (D.D.C.), ECF No. 92; on August 8, 2022, in *United States v. Neely*, No. 21-cr-642 (JDB) (D.D.C.), ECF No. 28; and on November 18, 2022, in *United States v. Kelly*, No. 21-cr-708 (RCL) (D.D.C.), ECF No. 59.  Under that calculation, both the July 18, 2022 and the August 8, 2022 Report filings occurred more than three years prior to the filing of the *West* action on October 31, 2025 and thus would be clearly time barred under the injury rule.  Similarly, under the injury rule, plaintiff's copyright claims against Woodward would have accrued when the Report was filed by Woodward on the public docket on June 3, 2022, in *United States v. Klein*, No. 21-cr-40 (TNM) (D.D.C.), ECF No. 309, which is also more than three years prior to the filing of the *Woodward* action on November 6, 2025.

Plaintiff does not dispute that application of the injury rule would bar two of her three claims against West and her sole claim against Woodward.  Rather, plaintiff urges application of the discovery rule instead.  Whether the injury rule or the discovery rule governs the timeliness of copyright claims is an open question in the Supreme Court and the D.C. Circuit.  *See Nealy*, 601 U.S. at 371 (recognizing that the Supreme Court has "never decided . . . whether a copyright claim accrues when a plaintiff discovers or should have discovered an infringement, rather than when the infringement happened," but sidestepping the issue as "not properly presented here," and simply assuming that the discovery rule applies in order to reach the merits); *Oppenheimer v. WL Magazine Group, LLC*, 2021 WL 6849089, at *3 (D.D.C. Mar. 4, 2021) (noting that "the DC Circuit has yet to address the question").

Every circuit except the D.C. Circuit, however, has considered the issue of claim accrual in the context of copyright infringement claims, and every circuit has landed on the discovery rule.

11

*See Nealy*, 601 U.S. at 371 (observing that the number of Courts of Appeals "applying a copyright discovery rule" was "11 at last count"); *see also Warren Freedenfeld Assocs., Inc. v. McTigue*, 531 F.3d 38, 44-46 (1st Cir. 2008); *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 124 (2d Cir. 2014); *William A. Graham Co. v. Haughey*, 568 F.3d 425, 433-37 (3d Cir. 2009); *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 796 (4th Cir. 2001); *Daboub v. Gibbons*, 42 F.3d 285, 291 (5th Cir. 1995); *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 390 (6th Cir. 2007); *Gaiman v. McFarlane*, 360 F.3d 644, 653 (7th Cir. 2004); *Comcast of Illinois v. Multi-Vision Elecs., Inc.*, 491 F.3d 938, 944 (8th Cir. 2007); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 705-07 (9th Cir. 2004); *Diversey v. Schmidly*, 738 F.3d 1196, 1200-01 (10th Cir. 2013); *Webster v. Dean Guitars*, 955 F.3d 1270, 1275-1276 (11th Cir. 2020). Further, although the D.C. Circuit has not yet opined, "the [judges] in this district that have applied the statute of limitations in the Copyright Act have also employed the discovery rule." *Oppenheimer*, 2021 WL 6849089, at *3 (citing *Tech 7 Sys., Inc. v. Vacation Acquisition, LLC*, 594 F. Supp. 2d 76, 83 (D.D.C. 2009); *Williams v. Curington*, 662 F. Supp. 2d 33, 38 (D.D.C. 2009)).

The Third Circuit, for instance, found the use of the discovery rule to "comport[] with the text, structure, legislative history and underlying policies of the Copyright Act." *Haughey*, 568 F.3d at 437. First, the circuit observed that the phrase "after the claim accrued"—found in the text of 17 U.S.C. § 507(b)—had been "previously interpreted" by the Supreme Court in another statutory provision "as embodying the discovery rule." *Id.* at 435 (citing *Urie v. Thompson*, 337 U.S. 163, 169-70 (1949), which concerned the Federal Employers' Liability Act). The Third Circuit, turning to the legislative history, further noted that Congress had "considered, but rejected, inclusion of specific statutory exceptions to the Copyright Act's statute of limitations in order to ensure that the courts could consider any equitable circumstances sufficient to excuse a plaintiff's

12

failure to sue within the three-year limitations period." *Id.* at 436.  Finally, the Third Circuit found policy considerations to favor the discovery rule, reasoning that "[t]echnological advances such as personal computing and the internet have 'made it more difficult for rights holders to stridently police and protect their copyrights.'" *Id.* at 437 (alteration omitted) (quoting John Ramirez, Note, *Discovering Injury? The Confused State of the Statute of Limitations for Federal Copyright Infringement*, 17 Fordham Intell. Prop. Media & Ent. L.J. 1125, 1158 (2007)).

Defendants provide no good reason to depart from the unanimous and overwhelming weight of persuasive authority on this issue, which defendants themselves, to their credit, have recognized. *See* Woodward's Reply at 4 ("Brand Woodward does not hide from the fact that many circuits do apply the discovery rule in these cases . . . . Further, Brand Woodward does not hide that several district courts in the District of Columbia have applied the discovery rule to copyright infringement claims.").  For similar reasons articulated by other circuits, plaintiff's argument in favor of application of the discovery rule for her copyright infringement claims is persuasive.[4]

### 2. Application of the Discovery Rule

West and Woodward argue that even if the discovery rule applies, plaintiff's claims are time-barred.  *See* Woodward's MTD at 9.  Application of the discovery rule, however, generally involves questions of fact not suitable for resolution on the pleadings.

The discovery rule analysis is "a fact-sensitive enterprise." *Oppenheimer*, 2021 WL 6849089, at *3 (quoting *McTigue*, 531 F.3d at 44).  Under the discovery rule, a claim does not accrue until "a party discovers, or reasonably should have discovered, the alleged infringement."

---

[4]     Unlike West and Woodward, Garrity did not raise a statute-of-limitations defense.  Since Garrity's alleged infringement occurred on December 6, 2022, *see United States v. Niemela*, No. 21-cr-623 (D.D.C.), ECF No. 65-1 (filing plaintiff's report), which is less than three years prior to plaintiff's commencement of the *Garrity* action on December 4, 2025, plaintiff's copyright claim against Garrity would not be barred under either the injury rule or the discovery rule.

13

*Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1022 (9th Cir. 2019).  Application of the discovery rule thus "involves determining what the plaintiff knew or should have known," such as "when a plaintiff had notice of the likely cause of her injury," which typically "is a factual question that is appropriate for the trier of fact."  *Genereux v. Am. Beryllia Corp.*, 577 F.3d 350, 360 (1st Cir. 2009) (internal quotation marks omitted); *see also Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 152 (2d Cir. 2024) ("The date on which a copyright holder, with the exercise of due diligence, would have discovered an infringement—or whether the alleged date of discovery reflected a lack of due diligence—is a fact-intensive inquiry . . . ."); *Michael Grecco Prods., Inc. v. BDG Media, Inc.*, 834 F. App'x 353, 354 (9th Cir. 2021) (noting that the "discovery rule analysis is a factual one," and typically "at what time [] search processes would or should have captured alleged [copyright] infringements is a question of fact that cannot be determined on a motion to dismiss").  Accordingly, as a general matter, the D.C. Circuit has instructed that unless "the complaint on its face is conclusively time-barred," "courts should hesitate to dismiss a complaint on statute of limitations grounds" based solely on the pleadings because "statute of limitations issues often depend on contested questions of fact."  *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996); *see also  Momenian v. Davidson*, 878 F.3d 381, 388 (D.C. Cir. 2017) ("[T]he complaint cannot be dismissed [as conclusively time barred] unless it appears beyond doubt that the plaintiff can prove no state of facts in support of his claim that would entitle him to relief." (quoting *Jones v. Rogers Mem'l Hosp.*, 442 F.2d 773, 775 (D.C. Cir. 1971) (alterations in original)).

Defendants argue that a diligent effort to uncover the alleged infringement of the April 2022 Report would have resulted in plaintiff's discovery of her claims against defendants no later than October 10, 2022, which is the date that, as described above, *see supra* I.A.1 (discussing *In*

14

*Lux Research*), defense counsel "Hull published the October 2022 Report in the *Nordean* case without making the payment for authorization." Woodward's MTD at 10 (quoting Olson's Am. Complaint ¶ 137, *In Lux Research v. Hull McGuire PC*, 1:23-cv-00523 (D.D.C. Oct. 25, 2023), ECF No. 70-1). In defendants' view, defense counsel Hull's use without payment of the October 2022 Report, resulting shortly thereafter in plaintiff's suit against Hull, was "the absolute final moment that Plaintiff can argue she learned about the existence of so-called pirated copies of the [April 2022] Report." Woodward's MTD at 11. Plaintiff, in turn, contends that she was not "required to scour every single other [January 6] case docket" simply because she discovered potential infringement in the *Nordean* case, and protests that her later discovery of the claims against defendants here required "a costly, time consuming and difficult search of [January 6] cases on PACER." Pl.'s Opp'n (Woodward) at 10.

Although questions abound as to why plaintiff took years to uncover defendants' alleged infringements, all of which were discoverable on public dockets, resolution of defendants' statute of limitations defense is not appropriate at this stage. Defendants have not met their "heavy burden" to show that "the complaint on its face is conclusively time-barred." *Feld Ent. Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals*, 873 F. Supp. 2d 288, 308 (D.D.C. 2012) (citation omitted). When plaintiff should have commenced her search of PACER, and when those search processes should have uncovered alleged copyright infringements, are contested questions of fact that cannot be conclusively answered from the pleadings alone. *See Firestone*, 76 F.3d at 1208-09. Defendants' motion to dismiss because the statute of limitations has expired is thus denied.[5]

---

[5]   Since no finding is made as to when plaintiff's claim accrued, defendants' arguments against the application of equitable tolling need not be reached. *See* Woodward MTD at 9, 11.

15

C.      Collateral Estoppel

West and Woodward also argue that plaintiff's claims are barred by the doctrine of collateral estoppel, noting that plaintiff in *In Lux Research*, *see supra* I.A.1, suffered adverse rulings by "[b]oth a judge in this district (at the motion to dismiss stage) and a jury in this district" with respect to her copyright infringement claim based on her October 2022 Report.  Woodward's MTD at 12.  This argument suffers fatal flaws.

"Collateral estoppel bars relitigation of an issue actually and necessarily litigated and determined in a prior final judgment."  *Nasem v. Brown*, 595 F.2d 801, 805 (D.C. Cir. 1979).  The party invoking collateral estoppel bears the burden of establishing that "the same issue [is] at stake in both cases, and the issue [has] been litigated and decided in the first suit."  *McCord v. Bailey*, 636 F.2d 606, 609 (D.C. Cir. 1980).  Further, "preclusion in the second case must not work a basic unfairness to the party bound by the first determination."  *Aenergy, S.A. v. Republic of Angola*, 123 F.4th 1351, 1356 (D.C. Cir. 2024) (quoting *In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*, 439 F.3d 740, 743 (D.C. Cir. 2006)).  "Collateral estoppel is an equitable doctrine," *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1022 (7th Cir. 2006), and "[t]he application of collateral estoppel is discretionary," *True Drilling Co. v. Donovan*, 703 F.2d 1087, 1093 (9th Cir. 1983).

Here, application of the collateral estoppel doctrine would be unfair to plaintiff because the litigation over plaintiff's October 2022 Report in *In Lux Research* concerned markedly different facts from those here over plaintiff's April 2022 Report.  In *In Lux Research*, plaintiff brought copyright infringement claims against the Proud Boys trial's defense attorneys, *United States v. Nordean*, No. 21-175 (D.D.C.), one of whom (i.e., Hull) contracted with plaintiff to produce the report yet never paid her.  Plaintiff then sued Hull for, *inter alia*, breach of contract and copyright infringement, as well as other defense attorneys involved in the joint trial for benefiting from the

16

October 2022 Report being filed on the consolidated docket. *In Lux Research I*, 2023 WL 6121906, at *5-9. The presiding Judge dismissed the claims against the non-contracting defense attorneys, reasoning that Hull filed the report only on behalf of his client and not the other defendants. *Id.* at *11. As to the contracting defense attorney, Hull, the jury ruled in plaintiff's favor on the contract claim but not the copyright infringement claim.

Little in the instant case parallels the litigation over the October 2022 Report in *In Lux Research*. To begin, this case concerns an earlier report, the April 2022 Report, with a different certificate of registration from the U.S. Copyright Office. Further, West, Woodward, and Garrity did not contribute to the April 2022 Report's creation, thus making their cases unlike the one against Hull, who commissioned the October 2022 Report but failed to pay and was found to be in breach of contract. Nor are the instant actions like the ones against the non-contracting attorneys, who never attached the October 2022 Report to their own motions, unlike West, Woodward, and Garrity, who downloaded the April 2022 Report from one public docket and filed the entire report again on the public dockets in their own clients' cases. The requirements for collateral estoppel—that both cases involve the same issue, that the issue was actually litigated and decided, and that preclusion would not be unfair—are thus not satisfied.[6]

### D.    Copyrightability of the Report

Garrity separately contends, as an antecedent matter to the issue of copyright *infringement*, that plaintiff fails to allege "a protected copyrightable *right* because copyright protects only

---

[6]    Indeed, *In Lux Research* contained another, much more similar copyright infringement claim against two defense attorneys who had downloaded the April 2022 Report in the Oath Keepers trial and filed that report for their own clients in the Proud Boys trial without plaintiff's knowledge. As plaintiff notes, "Defendants omit that Judge Boasberg denied a nearly identical motion to dismiss" with respect to that much similar claim, causing the parties to "later settle[]." Pl.'s Opp'n (Woodward) at 2; Pl.'s Opp'n (West) at 2.

original expression, not facts or functional compilations." Garrity's MTD at 4 (capitalization altered) (emphasis added). This argument is uncompelling.

The Copyright Act clearly states that a "certificate of a registration . . . shall constitute prima facie evidence of the validity of the copyright." 17 U.S.C. § 410(c). Here, plaintiff alleges "own[ing] a valid . . . copyright registration in the April 15, 2022 Report she authored," Compl. (Garrity) ¶ 77, thus making a *prima facie* showing of copyrightability sufficient to survive a motion to dismiss. Indeed, a similar conclusion was reached in *In Lux Research* with respect to copyright infringement claims related to the October 2022 Report, for which the presiding Judge found that plaintiff sufficiently alleged "ownership of a valid copyright" on a motion to dismiss because her "allegation that she received a certificate of registration from the U.S. Copyright Office for the Report 'constitute[s] prima facie evidence of the validity of the copyright.'" *In Lux Research I*, 2023 WL 6121906, at *5 (alteration in original) (quoting 17 U.S.C. § 410(c)). The motion to dismiss plaintiff's complaint for failure to allege a copyrightable right is thus denied.

### E.     Constitutional Right to Access and Review Judicial Records

West and Woodward further contend that dismissal is warranted because of "the constitutional rights of the public to access, review and distribute documents filed on PACER during a judicial proceeding." Woodward's MTD at 4. This argument overstretches.

Although the Supreme Court has recognized a "general right to inspect and copy public records and documents, including judicial records and documents," *Metlife, Inc. v. Financial Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)), "the right is not absolute," *S.E.C. v. Am. Int'l Grp.*, 712 F.3d 1, 3 (D.C. Cir. 2013). It is well-settled that the general right to access and use judicial records may be constrained by competing considerations, such as interests in privacy, *see, e.g.*, *AdHealth, Ltd. v. PorterCare Adventist Health Sys.*, 135 F.4th 1241, 1244 n.1 (10th Cir. 2025),

the confidentiality of sensitive business information, *see, e.g.*, *LEAP Sys., Inc. v. MoneyTrax, Inc.*, 638 F.3d 216, 219 (3d Cir. 2011), the secrecy of ongoing criminal investigations, *see, e.g.*, *Pub. Int. Legal Found., Inc. v. N. Carolina State Bd. of Elections*, 996 F.3d 257, 268 (4th Cir. 2021), and, as relevant here, property interests under copyright law, *see, e.g.*, *Religious Tech. Ctr. v. Lerma*, 908 F. Supp. 1362, 1367 (E.D. Va. 1995).

At least one district court has held, in *Religious Technology Center v. Lerma*, that notwithstanding the public nature of judicial records, "the mere existence of a copyrighted work in an open court file does not destroy the owner's property interests in that work" in the same way that "the placement of a copyrighted book on a public library shelf does not permit unbridled reproduction by a potential infringer." *Id.* (involving a case where a newspaper agency downloaded purportedly copyrighted material from a public docket and quoted portions of the copyrighted material in a news article). In a similar vein, for agency adjudications, another Judge on this Court has held that copyright protections applied to an expert report attached to an application filed with an agency, where the agency made such applications available for public review, finding that a competitor who later copied the report when submitting its own application likely infringed the copyright. *WPOW, Inc. v. MRLJ Enters.*, 584 F. Supp. 132, 136 (D.D.C. 1984).

Defendants' broad reliance on the right to access judicial records as a reason for outright dismissal is thus unconvincing. Here, plaintiff does not dispute the general right to view and reference judicial documents, but rather contends that defendants went a step too far by "reproduc[ing] and distribut[ing] the work for their own profit and cost savings for their client." Pl.'s Opp'n (Woodward) at 16 (emphasis omitted). She does not contest, for instance, that defendants could have referred the court to the April 2022 Report without infringing on her copyrighted work by "point[ing] to the docket entry" or "cit[ing] a few key lines." *Id.* at 29.

19

Plaintiff also accepts that defendants could have permissibly "summarized [the Report] for the Court in their own words." *Id.* at 29-30. In contrast to those uses, plaintiff complains that defendants made wholesale use of the Report by "copying, distributing, and publishing the entire report, full stop, so that their client[s] could receive the full benefit of it in support of their venue transfer motion." *Id.* at 30. In line with the reasoning of other judges, this Court concludes that merely making copyrighted material accessible in public records does not, by itself, destroy the copyright owner's property interest in that material. To hold otherwise would strip copyright protection from every photograph, book, film, song, or other creative work ever filed on the public docket in a litigation. *See* Pl.'s Opp'n at 17. Defendants' motion to dismiss on right-to-access grounds alone is thus denied.

Concomitant with the preservation of copyright protection, however, is the preservation of defenses to copyright infringement. *See infra* Part III.F; *see also Religious Tech. Ctr.*, 908 F. Supp. at 1367 (finding that "the preservation of copyright protection invariably comes the fair use exception, and on that ground [the defendants'] actions are proper"). One of these defenses, fair use, is discussed in the next section.

### F.      Fair Use Doctrine

Reaching the key substantive issue, defendants in all three cases devote focused attention on the affirmative defense that using plaintiff's April 2022 Report for the purpose of litigation constitutes fair use, which precludes liability for infringement. *See* Woodward's MTD at 17-24, Garrity's MTD at 7-15. In Woodward's and West's view, plaintiff is "overzealous" and "seeking to weaponize copyright law to override the due process rights of federal criminal defendants and penalize ardent advocacy by criminal defense counsel," leading to a veritable parade of horribles with a "legal theory [that] would chill zealous advocacy on behalf of criminal defendants, curtail the public's right to access and review public judicial records, and undermine the congressional

intent of copyright law." Woodward's MTD at 1, 4. Garrity insists that plaintiff's concession "that Defendants should have or could have simply summarized the findings and cited the Report . . . underscore[s] the absence of market harm in this case," which "weighs decisively in favor of fair use." Garrity MTD at 14-15. For her part, plaintiff denies she has "weaponized" anything" and is merely "protecting her rights," discounting defendants' arguments as "attempting to elevate a simple copyright dispute into a constitutional crisis, wrapping a common defense tactic under the guise of Sixth Amendment rights." Pl.'s Opp'n (Woodward) at 1-2. Although a trier of fact may find defendants' reasoning for invocation of the fair use defense compelling, deciding the issue on a motion to dismiss would be premature.

"In determining whether use made of a work . . . is a fair use," a court must consider factors including: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107. These four factors "are not meant to be exclusive: 'Since the doctrine is an equitable rule of reason, no generally applicable definition is possible, and each case raising the question must be decided on its own facts.'" *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985) (alteration omitted) (quoting House Report, at 65, U.S. Code Cong. & Admin. News 1976, p. 5678). Defendants "bear the burden of proving that their use was fair." *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 81 (2d Cir. 2014).

"The law is well-settled in this Circuit, however, that a defense of fair use is generally considered 'premature' at the motion to dismiss stage and is not addressed on a Rule 12(b)(6) motion, as it presents 'a mixed question of law and fact' and as such 'involves a fact-intensive

21

inquiry.'" *DBW Partners, LLC v. Mkt. Sec., LLC*, No. 22-cv-1333 (BAH), 2023 WL 2610498, at *4 n.1 (D.D.C. Mar. 23, 2023); *see also In Lux Research III*, 2024 WL 774858, at *3 (rejecting defendants' fair use defense on a motion to dismiss because "[f]air use is . . . a 'mixed question of law and fact' and normally calls for an extensive review of the factual record generated by discovery"); *Roe v. Bernabei & Wachtel PLLC*, 85 F. Supp. 3d 89, 99 n.8 (D.D.C. 2015) ("Defendants raise a fair use defense to Plaintiff's infringement claims. This defense is premature and the Court will not address it on a Rule 12(b)(6) motion." (collecting cases)); *Nichols v. Club for Growth Action*, 235 F. Supp. 3d 289, 295 (D.D.C. 2017) ("[F]air use is not traditionally decided on a motion to dismiss.").

Defendants contend this case is "one of the rare instances in which fair use analysis is appropriate prior to discovery and warrants dismissal," pointing principally to *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687 (7th Cir. 2012), a case in which the defendants raised a successful fair use defense on a 12(b)(6) motion to dismiss. Woodward's MTD at 18; *see also* Garrity's MTD at 7. In *Brownmark*, the district court found that defendants' challenged work—an episode from South Park, a television show widely known for satirical humor—was "obvious[ly]" parody and thus constituted fair use. *Brownmark*, 682 F.3d at 692. The Seventh Circuit affirmed the dismissal, agreeing that the parodic nature of the video was "clear[]," while notably "treat[ing] [the 12(b)(6)] motion as a motion for summary judgment" instead. *Id.*

*Brownmark* was an "exceptional" out-of-circuit case where the district court had all the facts needed from the pleadings, and has not been relied upon in this Circuit to grant any 12(b)(6) motion to dismiss based on the fair use defense. *See, e.g.*, *In Lux Research III*, 2024 WL 774858, at *3 (characterizing *Brownmark* as an "exceptional case" and seeing no reason to deviate from the general practice of denying 12(b)(6) motions arguing fair use); *Roe v. Bernabei & Wachtel*

*PLLC*, 85 F. Supp. 3d 89, 99 n.8 (D.D.C. 2015) (similar). Here, as two other courts have also found in similar suits brought by plaintiff alleging copyright infringement of her April 2022 Report, dismissal is premature because "some of the key facts . . . [are] disputed," such as whether "copying [the] April 2022 report was for [the] purpose of educating the Court," as defendants argued, or "commercial in nature," as plaintiff argued. *In Lux Research III*, 2024 WL 774858, at *4 (cleaned up); *see also* Feb. 25, 2026 Hr'g Tr. at 30:13-14, *Olson v. Webb*, No. 25-cv-3840 (S.D. Fl.), ECF No. 18-2 (rejecting defendants' arguments on a motion to dismiss that their use of the report was not commercial in nature). Accordingly, defendants' motion to dismiss on fair-use grounds is denied.[7]

### G.    Attorney's Fees

Finally, both sides' requests for attorney's fees are denied. West's and Woodward's request for attorney's fees under 17 U.S.C. § 505—which provides that in copyright infringement cases, the court "may . . . award a reasonable attorney's fee to the prevailing party as part of the costs"—is denied because, at least at this stage, defendants are not prevailing parties. Woodward's MTD at 26-27; West's MTD at 4.

Plaintiff's suggestion that "the Court should consider holding Defendants [West, Woodward, and Garrity] accountable for their lack of candor and vexatiously multiplying these proceedings" is also denied. *See* Pl.'s Opp'n (West) at 36; Pl.'s Opp'n (Woodward) at 35; Pl.'s Opp'n (Garrity) at 25. To impose sanctions under 28 U.S.C. § 1927, a district court must find that an attorney "multiplie[d] the proceedings . . . unreasonably and vexatiously." "A showing that

---

[7]    In addition to direct infringement, West and Woodward also understand plaintiff's complaint to assert a claim for secondary liability—which requires proof that defendants are either contributorily or vicariously responsible for a third party's direct infringement—and they seek dismissal of any such claim. *See* Woodward MTD at 25-26 (citing Compl. ¶ 86). In response, plaintiff clarified that she "alleges only direct copyright infringement based on respondeat superior, rendering Defendants' secondary copyright infringement liability arguments moot." Pl.'s Opp'n (Woodward) at 3. Plaintiff's complaint is far from clear on this point, but plaintiff's representation in briefing that she is not pursuing a copyright infringement claim under a theory of secondary liability is accepted.

counsel's behavior has been unreasonable and vexatious requires more than a showing of negligence. Instead, it requires a showing of deliberate action in the face of a known risk, the likelihood or impact of which the actor inexcusably underestimates or ignores." *Healey v. Labgold*, 231 F.Supp. 2d 64, 68 (D.D.C. 2002) (citing *United States v. Wallace*, 964 F.2d 1214, 1219 (D.C. Cir. 1992)). Similarly, "[i]n order to impose sanctions pursuant to its inherent power, a district court must find that: (1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, *i.e.*, motivated by improper purposes such as harassment or delay." *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 143 (2d Cir. 2012).

Plaintiff has fallen far short of establishing entitlement to fees. Proceedings have not been unreasonably or vexatiously multiplied. West, Woodward, and Garrity have each timely filed a single motion to dismiss, constituting the first substantive filing in each of their cases. Nor does anything suggest that these dismissal motions were filed for improper purposes such as harassment or delay. Plaintiff's complaints bring novel copyright claims in a context where the copyrighted work at issue was used in an effort to protect fundamental individual rights, and defendants' motions to dismiss raise colorable arguments favoring dismissal. Plaintiff's request for attorney's fees is thus denied.[8]

---

[8] As a final note, plaintiffs' complaint, among other things, seeks "actual damages or statutory damages" for the alleged infringement of her copyright, which plaintiff asserts "totals at least $30,000" per unauthorized use. *See* Compl. (West) ¶ 92(B) (requesting "actual damages or statutory damages . . . , which totals $90,000 for the three unauthorized uses"); Compl. (Woodward) ¶ 92(B) (requesting "actual or statutory damages . . ., which totals at least $30,000"); Compl. (Garrity) ¶ 88(B) (same). Under 17 U.S.C. § 412, except for exceptions not relevant here, statutory damages are available only where (i) the copyright owner registered her work before the infringement, or (ii) the infringement occurred within three months of the first publication, and registration is made within those three months. Neither situation allowing for statutory damages appears to apply to plaintiff, as she herself recognizes, when she states that based on the facts known presently, "statutory damages are most likely unavailable under 17 U.S.C. § 412." Pl.'s Response to March 12, 2026 Order to Show Cause (West) at 4, No. 25-cv-3840, ECF No. 15; *see also id.* (noting that the "same response is being filed in all three (3) actions"). This would leave plaintiff, *if* successful on her copyright infringement claims—an arduous endeavor in itself—to recovery of only actual damages, which may be significantly less than the $30,000 per use plaintiff seeks.

Actual damages, *see* 17 U.S.C. § 504(b), "are usually determined by the loss in the fair market value of the copyright, measured by the profits lost due to the infringement or by the value of the use of the copyrighted work to the infringer."

## IV.    CONCLUSION

For the foregoing reasons, defendants' motions to dismiss the complaint are DENIED.  An

order consistent with this Memorandum Opinion will be entered contemporaneously.

Date:  May 25, 2026

_____
**BERYL A. HOWELL**
United States District Judge

---

*Leonard v. Stemtech Int'l Inc*, 834 F.3d 376, 390 (3d Cir. 2016) (quoting *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 566 (7th Cir. 2003)).  Proving the fair market value to a trier of fact is no simple task.  After all, plaintiff herself does not contest that defendants could have freely referenced her work by "point[ing] to the docket entry," "cit[ing] a few key lines," or "summariz[ing] it for the Court in their own words," any option of which would have cost nothing and achieved the same purpose.  Pl.'s Opp'n (West) at 29-30.  Nor can plaintiff contest the fact that her report was not only unpersuasive to any Judge on this Court, but also her report was widely panned shortly after its publication, including in the very case from which the report was downloaded.  *See, e.g.*, *Rhodes*, 610 F. Supp. 3d at 58 (APM) (finding report's conclusion about District residents' "failure to recognize or admit threats to fairness and impartiality" to be "at best pure conjecture, and at worst an intentionally contrived theory"); *United States v. Garcia*, No. 21-cr-0129 (ABJ), 2022 WL 2904352, at *10, 13 (D.D.C. Jul. 22, 2022) (detailing the "flaw[s]" in plaintiff's report, including that the survey was not "representative of the D.C. jury pool," and contained "overly broad" or "inartful" questions); *United States v. GossJankowski*, No. 21-cr-0123 (PLF), 2023 WL 395985, at *4 (D.D.C. Jan. 25, 2023) (criticizing plaintiff's report for, *inter alia*, "fail[ing] to specify the sources it used to generate its list," suffering from "flawed questions," and "draw[ing] overgeneralized conclusions from their results" (internal quotation marks omitted)).